COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


BONNIE STROUD HERNANDEZ

                                                    MEMORANDUM OPINION[*]
v.       Record No. 2203-08-2                          PER CURIAM
                                                       MAY 12, 2009
CHESTERFIELD-COLONIAL HEIGHTS
   DEPARTMENT OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                              Michael C. Allen, Judge

            (Robin M. Morgan; Blackburn, Conte, Schilling & Click, P.C., on
            briefs), for appellant.

            (Steven L. Micas, County Attorney; Michael S. J. Chernau, Senior
            Assistant County Attorney; Jennifer M. Newman, Guardian *ad
            litem* for the minor children, on brief), for appellee.


        Bonnie Stroud Hernandez (mother) appeals the trial court's order terminating her parental

rights to her children. Mother argues that the trial court erred in (1) admitting CASA reports filed in

the juvenile and domestic relations district court (JDR court) as part of the evidence in the case for

termination of her parental rights; (2) allowing the guardian *ad litem* to present the children's

statements, wishes, and feelings regarding custody, foster care placement, adoption, and their

relationship with their mother, in her closing argument; (3) finding that reasonable and appropriate

efforts of the social, medical, mental health, and other rehabilitative agencies were made to remedy

the conditions leading to or requiring continuation of foster care placement; (4) finding that mother

failed to remedy substantially the conditions which led to or required continuation of foster care

placement for her children; and (5) finding that the termination of mother's parental rights was in

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the best interests of the children. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

## BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

So viewed, the evidence proved that mother had seven children, five of which are involved in this appeal.[1] Mother had been involved with the Chesterfield–Colonial Heights Department of Social Services (the Department) since 1992. In June 2006, the Department received a complaint that Luis Hernandez-Hidalgo, who is mother's husband and father of four of the children, struck mother's car with a two-by-four while she and the children were inside the car. The Department filed petitions alleging that the children were abused and/or neglected. On August 11, 2006, the JDR court entered a Preliminary Child Protective Order and listed several requirements for mother and Hernandez-Hidalgo. Subsequently, a child protective order replaced the preliminary order. On February 5, 2007, the JDR court found that the child protective order did not protect the children, and the JDR court removed the children and placed them in the Department's care.

The Department presented a foster care plan with a goal of relative placement and a concurrent goal of adoption because of the history of failed services to mother. The JDR court accepted the plan, as did the circuit court on appeal.

---

[1] The oldest child was not involved in any of the lower court's proceedings. The natural father of one of the children was awarded custody of her in the juvenile and domestic relations district court after the child had been removed from mother's care, and, therefore, that child is not involved in the appeal.

When the goal of relative placement had not been achieved, the Department revised the plan with a goal of adoption. The JDR court approved the plan, and mother appealed. In the circuit court, the JDR appeal was consolidated with the case to terminate mother's parental rights. After hearing extensive testimony over the course of three days, the trial court approved the goal of adoption and terminated mother's parental rights.[2] Mother timely noted her appeal.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

## CASA reports

Mother first contends that the trial court erred in admitting the CASA reports as evidence in the case for termination of mother's parental rights.

The JDR court appointed CASA pursuant to Code § 9.1-153. CASA filed several reports with the JDR court and concurred with the goal of adoption. When mother appealed the goal of adoption, the circuit court consolidated the case with the termination of mother's parental rights. Mother concedes that the CASA reports in the JDR appeal of the goal of adoption became part of the record in the circuit court on appeal.

Mother argues, however, that the CASA reports should not have been considered in the termination of parental rights case. She argues that the court did not appoint CASA in the termination of rights case, and there is no statutory authority for the CASA reports to be part of the termination of parental rights case.

_____

[2] The trial court terminated Hernandez-Hidalgo's parental rights to his four children. The father to the other child involved in this appeal voluntarily terminated his parental rights.

"The advocate [CASA] shall continue his association with each case to which he is assigned until relieved of his duties by the court or by the program director."  Code § 9.1-153(C). One of CASA's duties is:  "Assisting any appointed guardian *ad litem* to represent the child in providing effective representation of the child's needs and best interests."  Code § 9.1-153(A)(4).

Here, there is no evidence to show that CASA was relieved of its duties on appeal.  The guardian *ad litem* was involved in the termination of parental rights case.  CASA was, therefore, involved in the circuit court case, and the trial court did not err in considering the CASA reports in the termination of parental rights case.

### Guardian *ad litem's* statements in closing argument

Mother next argues that the guardian *ad litem*, in her closing argument, presented statements of fact as to the children's wishes regarding adoption, their feelings about their foster families, and their relationship with mother.  Mother contends that the guardian *ad litem* acted as a witness testifying about the children's desires.

Mother argues that the guardian *ad litem* violated the Supreme Court of Virginia's "Standards to Govern the Performance of Guardians *Ad litem* for Children."  Those standards state, "The [guardian *ad litem*] acts as an attorney and not a witness, which means that he or she should not be cross-examined and, more importantly, should not testify."  Standards to Govern the Performance of Guardians *Ad Litem* for Children, Intro. Com't. (2003), at http://www.courts.state.va.us/gal/gal_standards_children_080403.html.

By overruling mother's objection, the trial court stated that it was accepting the guardian *ad litem's* statements about the children because "it's a basis for her recommendation."  At this point in the trial, the guardian *ad litem* was explaining her recommendation to the circuit court.  She was not testifying, as mother alleges.

To testify means "to give evidence as a witness." Black's Law Dictionary 1514 (8th ed. 2004). Here, the guardian *ad litem* was not giving evidence as a witness. She had not been sworn and was not subject to examination. Instead, the guardian *ad litem* was stating her recommendation to the court, and the court accepted her information as a "basis for her recommendation" and not testimony. Therefore, the trial court did not err.

Reasonable and appropriate efforts

Mother argues that the evidence was insufficient to prove that reasonable and appropriate efforts of social, medical, mental health, and other rehabilitative agencies were made to remedy the conditions which led to or required continuation of foster care.

A person's parental rights may be terminated if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Mother argues that there was no clear and convincing evidence that reasonable and appropriate services were provided to her. She contends that the Department relies on services that were provided to her before the children went into foster care and that most of those services related to her oldest child.

"The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care." Id.

Here, there was extensive evidence about the services provided to mother beginning in 1992. The Department offered her in-home counseling, individual counseling, family

counseling, parenting counseling, parenting classes, marital counseling, and psychological assessments.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

The Department worked with mother and her family for years. Despite all of the services, the situation did not improve. The court did not err in finding that reasonable and appropriate services were provided to mother.

<u>Mother failed to remedy the situation</u>

Mother contends that the trial court erred in finding that she failed to remedy substantially the conditions which led to or required continuation of foster care placement for her children.

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Here, the trial court held that mother was not "unwilling to remedy the conditions which led to the foster placement, but . . . sadly, . . . [she was] unable to do so." The trial court noted that mother made efforts "to address the issues that have been problematic." However, considering "the history of this family, the history, the chaos, the trauma, the discipline of the

- 6 -

children and the circumstances of each of the parents from an economic standpoint, from an emotional standpoint," the trial court found that mother was unable to remedy her situation. Mother's counselors even testified that she still needed more therapy and would require extensive services and support if the children were returned to her care. During visitations with the children, mother demonstrated that she needed assistance. The social worker assisted her with supervision and discipline of the children. Mother had to be reminded to not show favor to one child over another. At times, mother showed more interest in herself than the children. For instance, she would be so focused on taking pictures and movies that she would not interact with the children.

There was sufficient evidence to prove that mother was unable to remedy her situation, especially considering that the Department had been involved with her family since 1992.

### Best interests of the children

Mother argues that the trial court erred in finding that termination of her parental rights was in the best interests of the children.

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Mother had been receiving services from the Department for years, and finally, in 2007, when she was not able to meet the Department's requirements under the protective order, the Department removed the children from her care. Upon their arrival into foster care, the children were anxious, aggressive, and defiant, and they had trouble sleeping. After visiting with their parents or talking with them on the phone, the children became aggressive and out of control.

They would not listen and had trouble in school. The teachers noticed a negative change in the children after a visit or a telephone call with their parents. The children's counselors believed that emotional and physical abuse existed in the home prior to the children entering foster care. Once the children received stability and services from foster care, the children's behaviors improved. The children expressed their desire not to return to their mother's care.

Despite the fact that the Department had provided services to the mother for many years, the children were not doing well in her care. Once they were removed and placed into foster care, the children improved. It was in the children's best interests for mother's parental rights to be terminated.

### CONCLUSION

The record supports the trial court's finding that the evidence proved by clear and convincing evidence that mother's parental rights should be terminated and that the termination of mother's parental rights was in the children's best interests. Code § 16.1-283. Accordingly, we summarily affirm the judgment. See Rule 5A:27.

Affirmed.